*476 OPINION OF THE COURT
Carmen J. Cognetta, Jr., J.
The parties, though separated, are still married, and therefore respondent is chargeable with fairly and reasonably contributing to petitioner’s support if he is financially able. (Family Ct Act § 412.)
Petitioner has become pregnant during the parties’ separation. Respondent contends that the child is not his and that therefore he may not be held liable for any of her expenses attributable to the pregnancy. Further, he contends that because petitioner’s current state of unemployment is due to her pregnancy and that her pregnancy was, he alleges, a voluntarily induced condition, he should not be charged with contributing to her support at all. He argues that he is entitled to introduce evidence to rebut the presumption of legitimacy, to wit, blood tests, which he requests the court to order. Petitioner denies respondent’s allegations and contends that he impregnated her. The court finds respondent’s arguments without merit for the following reasons.
PREGNANCY discrimination
The only relevance of petitioner’s pregnant state to her petition for support is that it is a medical condition which impacts on her legitimate expenses and her temporary inability to work. Medical attention is an element of support. (Family Ct Act § 416.) A spouse may be liable for support when the other is unable to work due to a debilitating condition. (Matter of Seward v Seward, 75 AD2d 583.) In Morgan v Morgan (191 Misc 53), the court held that a wife’s alcoholism could not relieve her husband of the obligation for her support.
As to the possible voluntary nature of petitioner’s medical condition, the court holds that this does not mitigate the spousal support obligation. In Matter of L. Pamela P. v Frank S. (59 NY2d 1), it was held that a father’s lack of consent to the mother’s voluntary decision to conceive and bear a child did not relieve him of the obligation to support his child, an obligation which continues until the child’s twenty-first birthday. (Family Ct Act § 413.)
The court finds that, in the spousal support context, to treat the medical condition of pregnancy differently from other medical conditions would be a violation of a woman’s right to equal protection. A medical condition unique to males, of *477 which there are several, could certainly not vitiate an otherwise legitimate claim for spousal support; likewise, a female petitioner’s pregnancy should in no way abrogate her right to support if otherwise legitimate. Such distinctions by the State, under the auspices of its Family Court, would be constitutionally offensive (US Const, 14th Amend, § 1; NY Const, art I, § 11), as there is no important governmental objective substantially related to such differential treatment. (See, Mississippi Univ. for Women v Hogan, 458 US 718 [1982].)
Pregnancy discrimination has been a much litigated issue in the area of employment law, and its opponents have not always met with success. In Geduldig v Aiello (417 US 484 [1974]), the court upheld exclusion of pregnancy from a State’s employee disability plan. Similarly, in General Elec. Co. v Gilbert (429 US 125 [1976]), the court upheld exclusion of pregnancy from a corporation’s employee disability plan. However, Congress effectively reversed this holding by passing the Pregnancy Discrimination Act (PDA) of 1978, an amendment to title VII of the Civil Rights Act of 1964. (See also, Note, Employment Equality under the Pregnancy Discrimination Act of 1978, 94 Yale LJ 929, 931, n 10, citing Hanson v Hoffmann, 628 F2d 42, wherein it is posited that the analysis under Geduldig may be changed subsequent to tit VII developments; Maddox v Grandview Care Center, 780 F2d 987.)
While the nature of pregnancy discrimination as a form of sex discrimination has eluded the Supreme Court,[1] sex discrimination in general has been progressively receiving greater protection. In Los Angeles Dept. of Water & Power v Manhart (435 US 702, 711), the Supreme Court, invalidating a pension plan that require women to make larger contributions than men for the same benefits, found discrimination using "the simple test of whether the evidence shows 'treatment of a person in a manner which but for that person’s sex would be different.’ ”
New York also has enacted various legislation expressly or implicitly precluding discrimination based on pregnancy. (See, e.g., Workers’ Compensation Law § 201 [9] [B]; Human Rights Law [Executive Law art 15].) In addition to New York legislation, the New York Court of Appeals has provided greater protection against pregnancy discrimination than the United *478 States Supreme Court. In Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd. (41 NY2d 84), the court precluded a private employer (with more than three employees) from treating pregnancy differently than other medical conditions under disability and sick leave plans; public employers had been previously precluded as noted by the court. (See also, Matter of Javier v Netumar Intl., 58 AD2d 912; Avnet, Inc. v American Intl. Life Assur. Co., 65 AD2d 721.)
Consistent with the legal evolution of a woman’s right to be free of disparate treatment and disparate impact from governmental . distinctions based on sex, the court concludes that pregnancy does not diminish a woman’s entitlement to spousal support.
PRESUMPTION OF LEGITIMACY
Respondent argues that he should be allowed by the court to present evidence to rebut the presumption of the legitimacy of the fetus his wife is carrying which arises by virtue of marital status. The presumption of legitimacy is rebuttable, though one of the strongest presumptions known to the law. (Matter of Findlay, 253 NY 1.) The court will not allow this evidence, because legitimacy of the child in útero is not relevant to a petition for support of petitioner, respondent’s wife. This evidence is only relevant in a proceeding wherein support is sought for the child whose legitimacy is questioned. Respondent’s defense will be available if subsequent to the child’s birth petitioner seeks a support order on behalf of the child. (Matter of Sandra I. v Harold I., 54 AD2d 1040.)
Corollary to this argument is respondent’s request for blood testing to rebut the presumption of legitimacy and prove his nonpaternity of the child in question. This court will not order blood testing on a child in útero. Courts are justifiably reluctant to order blood testing on a fetus. (See, Matter of Anne E. S. v Antonios S., 115 Misc 2d 192.) "[CJoncern for the safety of the fetus and any risk inherent in prenatal blood withdrawal” comprise a legitimate justification for denial of such a request. (Matter of Gloria C. v William C., 124 Misc 2d 313, 317.) It should also be noted that the statutory authorization for such blood tests mentions testing of the mother, alleged father and the child. (Family Ct Act § 418.) Child means one already born. (See, Family Ct Act § 512 [b]; § 1012 [b].) Furthermore, the request for blood testing is denied because, as *479 stated supra, the legitimacy of the fetus is not relevant in this case. In any proceeding where the child’s paternity is relevant, then the court may order blood tests. (Family Ct Act § 418.)[2]
SPOUSAL SUPPORT
Respondent, in his defense of this support petition, also relies on his attainment last year of legal custody of the parties’ five-year-old daughter. This fact and whatever finding of facts led to the custody determination are not relevant to the instant proceeding, except to the extent that respondent’s expenses legitimately include those of his daughter. His expenses are a factor in determining his means with which to contribute to the support of his wife. (Family Ct Act § 412.)
The issues before this court are whether petitioner is in need of support as claimed in the petition, whether respondent has the means or ability to contribute to her support, and if so what is a fair and reasonable amount for his obligation. (Family Ct Act § 412.)
A hearing was held in this matter on January 15, 1986, at which time both parties, represented by counsel, gave testimonial evidence and submitted weekly expense and earning statements. The court found petitioner a credible witness and her statement of expenses quite reasonable and uninflated. For example, she listed no allocation for clothing and nominal rent and utility expenses. Her sole income consists of $168 per week in unemployment benefits. In fact, the court finds that petitioner, in her present circumstances, may become a public charge, and respondent is, therefore, responsible for her support. (Family Ct Act § 415.)
Respondent, conversely, was not totally forthcoming with the court and not totally credible. He contends that, after assuming custody of the parties’ daughter, he incurred great expense, to wit, rental of a two-bedroom apartment and a loan for $8,000 used to furnish the apartment, an amount the court finds exorbitant. Respondent is employed at a Wall Street financial firm which, in addition to his salary, approximately *480 $29,000 per year, provides full insurance benefits (medical, dental, drug, life and health).[3]
After carefully considering the facts adduced at the hearing, and in accordance with the reasoning of the court set forth in this opinion, respondent was ordered to pay $40 per week to petitioner for her support, in the "All Purpose Short Order” dated March 7, 1986. This support order may be reviewed after the birth of the child, as petitioner’s circumstances will likely be changed, e.g., she may go back to work or may no longer be receiving unemployment benefits. (Family Ct Act § 451.)[4]

. 94 Yale LJ 929, 931, n 11; see also, Cole, Strategies of Difference: Litigating for Women’s Rights in a Man’s World, 2 Law and Inequality 33 (1984).

. Cf. Family Court Act § 418, providing the court with discretion as to ordering of blood tests in support proceedings, with Family Court Act § 532, requiring the court to order blood tests in paternity proceedings as a right of the parties.

. Respondent did consent at the conclusion of the hearing to maintain health insurance coverage for his wife through his employer’s plan.

. As a postscript to this opinion, it is noted that petitioner has subsequently given birth and on June 4, 1986 filed a supplemental petition against respondent for support of the baby. This new petition is on the calendar for hearing on August 5, 1986.